UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PEL HUGHES PRINTING, L.L.C.,                CIVIL ACTION
ET AL

VERSUS                                       NO: 07-4044

HANOVER INSURANCE GROUP,                     SECTION: J(2)
INC., ET AL

**ORDER AND REASONS**

Before the Court is Defendants The Hanover Insurance Group,
Inc. and The Hanover Insurance Company's (collectively,
"Hanover") **Motion for Partial Summary Judgment to Dismiss
Plaintiffs' Claim for Business Interruption Coverage Under the
Printing Industries Broadening Form's Off-Premises Power Failure
Provision (Rec. Doc. 10)**; Hanover's **Motion for Partial Summary
Judgment Regarding Application of the Co-Insurance Provision and
Limits of Insurance to Business Income Losses and Extra Expenses
(Rec. Doc. 11)**; and Plaintiffs' **Motion for Partial Summary
Judgment (Rec. Doc. 14).**

These cross-motions, which are opposed, are set for hearing
on April 16, 2008 with oral argument.  Upon review of the record,
the memoranda of counsel, and the applicable law, this Court now

finds, for the reasons set forth below, that Plaintiffs' motion should be denied and that Hanover's motions should be granted in part and denied in part.

### Background Facts

This matter arises out of damages sustained by Plaintiffs as a result of Hurricane Katrina.  Plaintiff Pel Hughes Printing, L.L.C. operates a commercial printing business based in New Orleans and provides printing and mail services, specializing in variable data printing, for numerous customers[1] including many national accounts.[2]  Plaintiffs were issued a commercial lines policy by Hanover for the policy period of August 10, 2005 through August 10, 2006.  The policy provided a broader form of commercial property and liability insurance coverage.  As a result of Hurricane Katrina, Plaintiffs sustained a loss of business income and extra expense caused by off-premises power failures that were not fully restored for several months.

The insurance policy at issue contains several sections. The policy begins with the Commercial Lines Policy Common

---

[1]  Pel Hughes Printing, L.L.C. would print and directly mail personalized promotions, newsletters, and financial statements upon receipt of secure, variable data from its customers via secure internet communications.

[2]  Pel Hughes Building Co., L.L.C. owns the property at issue, leasing a portion of the building to Pel Hughes Printing, L.L.C.  The remaining Plaintiffs, John V. Hughes and Jacqueline Hughes are principals in Pel Hughes Printing, L.L.C. and Pel Hughes Building Co., L.L.C.

Declarations Page.  The Common Declarations Page sets forth four different types of coverage, i.e., four "coverage parts": (1) commercial property coverage part, (2) commercial property mortgage holders schedule, (3) commercial general liability part, and (4) commercial inland marine coverage part.  Following the Common Declarations Page are "Forms Applicable to All Coverage Parts," which include forms not particularly relevant to the issues currently before the Court.[3]

Each coverage part has its own Declarations Page.  The first coverage part, beginning with the "Commercial Property Coverage Part Declaration" lists the forms applicable to this coverage part, and relevant for purposes of the instant motions are: the building and personal coverage form which includes the co-insurance provision (form # CP 00 10 06/95), the causes of loss - special form including the flood exclusion (form # CP 10 30 06/95), the business income and extra expense coverage together with the method for computing co-insurance (form # CP 00 30 06/95), and a fixed dollar deductible form (form # CP 03 20 10/92).

The fourth coverage part,[4] beginning with the "Commercial

---

[3]  These forms relate to installment payments of premium, the required signature of a Hanover officer, certain changes concerning cancellation and non-renewal, common policy conditions, and the offer of terrorism coverage.

[4]  Part two, the commercial property mortgage holders schedule, and part three, commercial general liability part, are

Inland Marine Coverage Part Declaration" also lists the forms
applicable to this coverage part.  The forms relevant for
purposes of the instant motions include: the property special
broadening endorsement (form # 411-0078) and the printing
industries broadening form (form # 411-0078).

## **Applicable Law**

**A.   Summary Judgment Standard**

Summary judgment is appropriate where the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show there is no genuine
issue as to any material fact and that the moving party is
entitled to judgment as a matter of law.  <u>Little v. Liquid Air
Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ.
Proc. 56(c)).  The moving party bears the initial burden of
demonstrating to the court that there is an absence of genuine
factual issues.  <u>Id.</u>  Once the moving party meets that burden,
the non-moving party must go beyond the pleadings and designate
facts showing that there is a genuine issue of material fact in
dispute.  <u>Id.</u>  "A factual dispute is 'genuine' where a reasonable
jury could return a verdict for the non-moving party.  If the
record, taken as a whole, could not lead a rational trier of fact
to find for the non-moving party, then there is no genuine issue
for trial and summary judgment is proper."  <u>Weber v. Roadway</u>

---

largely irrelevant to this matter.

<u>Exp., Inc.</u>, 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted).  The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  <u>[The courts] do not,</u> <u>however, in the absence of any proof, assume that the nonmoving</u> <u>party could or would prove the necessary facts.</u>"  <u>Little</u>, 37 F.3d 1075  (emphasis in original) (citations omitted).

**B.   Contract Interpretation**

A contract has the effect of law between the parties.  La. Civ. Code art. 1983.  Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.  La. Civ. Code art. 2050.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.

<u>**Discussion**</u>

Plaintiffs seek summary judgment on three grounds, namely, that: (1) Plaintiffs' claims for business income loss and extra expense resulting from utility service interruption are covered

5

under the Printing Industries Broadening Form; (2) these covered claims are not subject to any flood exclusion; and (3) these covered claims are not subject to any limit of insurance or any co-insurance percentage and have only a $250 deductible.

**A.   Coverage--Is the Entire Policy to Be Considered as a Whole or Do Individual Coverage Parts Control?**

As for the initial coverage ground, Plaintiffs' argument hinges on an interpretation of the policy of insurance which divides the policy into four separate coverage parts, none of which are in any way related to the other parts.  Relevant for purposes of the instant motions are the commercial property coverage part (part one) and the commercial inland marine coverage part (part four).

Plaintiffs argue that the terms and conditions of one coverage part do not apply to the terms and conditions of the other coverage parts.  Specifically, Plaintiffs argue that the terms and conditions set forth in the "Printing Industries Broadening Form" contained within coverage part four (the commercial inland marine coverage part) are the only applicable terms and conditions.[5]

_____

[5]  For example, Plaintiffs state that the Printing Industries Broadening Form provides for its own schedule of limits.  While many of the coverages contained within the form provide their own limits of insurance, the "Off-Premises Power Failure - Direct Damage and Time Element" coverage (the coverage that is the subject of the instant motion) has no limit of

6

In opposition, Hanover argues that the coverage forms contained within the entire policy inter-relate and refer back to one another.

After a thorough reading of the policy, this Court determines that the forms do inter-relate, and that the Printing Industries Broadening Form does not stand on its own. In support of this reading which finds that, for instance, the Causes of Loss - Special Form (form # CP 10 30) applies to the entire policy (and not just the commercial property coverage part in which the form is contained), this Court notes that within coverage part four (the commercial inland marine coverage part), the "Property Special Broadening Endorsement" (form # 411-0078) specifically provides that it "<u>modifies</u> insurance provided under" the Building and Personal Property Coverage Form (form # CP 00 10) and the Causes of Loss - Special Form (form # CP 10 30) (emphasis added). In this sense, while Plaintiffs attempt to confine coverage within coverage part four (the commercial inland marine coverage part), in the same breath, Plaintiffs ignore this second form that appears in this same coverage part. Such a reading would contravene general principles of contract interpretation which calls for a reading together of all portions

---

insurance specifically stated. Rather than specifying a coverage amount, the limit of insurance is designated simply as "covered." Plaintiffs interpret this as meaning the coverage amount is unlimited.

of the policy.  Without the "Property Special Broadening Endorsement" (form  # 411-0078), one could search the Printing Industries Broadening Form in vain to find a definition of "business income loss" and "extra expenses."

Therefore, the exercise that must be undertaken is to read the "Property Special Broadening Endorsement" (form  # 411-0078), which appears in coverage part four, in conjunction with the Building and Personal Property Coverage Form (form # CP 00 10) and the Causes of Loss - Special Form (form # CP 10 30), which appear in coverage part one, to determine how the latter two forms have been modified in each coverage part.  For example, there are several instances in the "Property Special Broadening Endorsement" (form # 411-0078) in which the form explicitly directs that certain exclusions contained within the Building and Personal Property Coverage Form (form # CP 00 10) and the Causes of Loss - Special Form (form # CP 10 30)  "do not apply to this [the commercial inland marine] Coverage."[6]  This comports precisely with the very title of the form - the "Property Special Broadening Endorsement," as if to indicate that by omitting certain exclusions contained within coverage part one, the endorsement "broadens" coverage in coverage part four.

It follows that if the "Property Special Broadening

_____

[6]  See, e.g. parts III.A.7, 8, 9d), 12, and 22; parts III.B.4 and 10 of the "Property Special Broadening Endorsement" (form  # 411-0078).

Endorsement" (form  # 411-0078) fails to explicitly state that a certain exclusion or other provision of the Building and Personal Property Coverage Form (form # CP 00 10) and the Causes of Loss - Special Form (form # CP 10 30) should be omitted or replaced, then such provisions must be considered <u>not</u> to be so modified. In other words, such provisions must be read to apply as written in the original Building and Personal Property Coverage Form (form # CP 00 10) and the original Causes of Loss - Special Form (form # CP 10 30).

Further support for this conclusion is found in the Printing Industries Broadening Form itself, which specifically provides that "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered."

Therefore, while Plaintiffs' claims for business income loss and extra expense resulting from utility service interruption may very well be covered under the Printing Industries Broadening Form, such coverage is not determined solely by this form or even solely by coverage part four (the commercial inland marine coverage part), but must be determined based on the policy's provisions as a whole.

**B.    Applicability of Flood Exclusion**

Plaintiffs rely on the following language contained within the Printing Industries Broadening Form to argue that the

Printing Industries Broadening Form is not subject to a flood
exclusion:

> **COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered
> Property described in this Form caused by or resulting from
> any covered loss, <u>unless the loss is excluded in Section V,
> Exclusions and Limitations, or elsewhere in this Form</u>.

(emphasis added).

Plaintiffs argue that no "flood exclusion" appears anywhere
in the Printing Industries Broadening Form, and therefore does
not apply.  However, the first line of the Printing Industries
Broadening Form is a statement which provides that "[v]arious
provisions in this <u>policy</u> restrict coverage.  Read the entire
<u>policy</u> carefully to determine rights, duties and what is and is
not covered" (emphasis added).  Following this instruction, and
in accordance with the discussion above, it is necessary to
consider the terms and conditions of the entire policy of
insurance.

The flood exclusion is contained in the commercial property
coverage part, specifically within the Causes of Loss - Special
Form (form # CP 10 30).  It is therefore necessary to consider
the modifications indicated in the commercial inland marine
coverage part to determine whether this exclusion has been
deleted or otherwise modified.  As no such deletion or
modification appears, the flood exclusion applies to coverage

10

part four.[7]

## C.    Applicability of Coverage Limits, Co-Insurance, and

   Deductible

Plaintiffs argue that the Printing Industries Broadening
Form provides for its own schedule of limits.  While many of the
coverages contained within the form provide their own limits of
insurance, the "Off-Premises Power Failure - Direct Damage and
Time Element" coverage (the coverage that is the subject of the
instant motion) has no limit of insurance specifically stated.
Rather than specifying a coverage amount, the limit of insurance
is designated simply as "covered."  Plaintiffs interpret this as
meaning the coverage amount is unlimited.

In opposition, Hanover argues that the Property Special
Broadening Endorsement (form  # 411-0078) contained in coverage
part four contains a blanket limit of $250,000 for additional
blanket coverages, including but not limited to business income
losses and extra expense.  Because the Printing Industries
Broadening Form must be read with the Property Special Broadening
Endorsement, and since the former does not modify the blanket
limit of insurance pertaining to business income loss and extra
expense provided in the Off-Premises Power Failure provision, any
business income loss or extra expense recoverable under the Off-

_____

[7]  It should be noted that in so ruling, this Court is not
deciding whether the flood exclusion applies to the particular
facts of this case.

Premises Power failure provision is limited to $250,000.

Pursuant to the method of interpreting the policy set forth above, this Court determines that the $250,000 limit for business income loss and extra expenses applies in this instance.  A finding of unlimited coverage under the Printing Industries Broadening Form as suggested by Plaintiffs would be an "absurd consequence" in light of the comparatively low premium of $830 charged in coverage part four.  See  La. Civ. Code art. 2046.

As far as the deductible is concerned, the Printing Industries Broadening Form lists its own deductible.  The form provides:

> **DEDUCTIBLE**
>
> Each loss shall be adjusted separately, and from the amount of such adjusted loss, the sum of $250 (unless otherwise indicated) shall be deducted.

Therefore, this Court agrees with Plaintiffs that the covered claims have only a $250 deductible so long as Plaintiffs seek to recover under the Printing Industries Broadening Form.

And regarding co-insurance percentages, the Property Special Broadening Endorsement (form  # 411-0078) within coverage part four (the commercial inland marine coverage part), specifically states that "[i]f applicable, the ADDITIONAL CONDITIONS, Coinsurance will continue to apply."  See page 18 of the Property Special Broadening Endorsement (form  # 411-0078).  Referring back to the ADDITIONAL CONDITIONS contained within the Building

and Personal Property Coverage Form (form # CP 00 10) contained in coverage part one, the Coinsurance provision provides: "[i]f a Coinsurance percentage is shown in the Declarations, the following [Coinsurance] condition applies."  Turning to the commercial property coverage part declaration page, business income other than rental value including extra expense has a coinsurance percentage of 100 percent.  As a result, absent language within the Property Special Broadening Endorsement (form # 411-0078) or the Printing Industries Broadening Form specifically modifying this provision, which is the case here, Plaintiffs' covered claims are subject to the referenced co-insurance percentage.

**D.   Off-Premises Power Failure Specifically**

The Printing Industries Broadening Form explains that if any of the property covered by the form is also covered under any other provisions of the policy, the insured can elect to make a claim under that other provision (in which case none of the provisions of the Printing Industries Broadening Form would apply) or under the provisions of the Printing Industries Broadening Form itself (in which case coverage as provided by the form is the sole coverage on such property).

Presumably, Plaintiffs have elected to seek coverage under the Printing Industries Broadening Form.  As explained above, this does not eliminate the application of the flood or "Water"

13

exclusion on its face.  Assuming the water exclusion does not
eradicate Plaintiffs' chances of recovery, the Court now
considers whether the Off-Premises Power Failure provision of the
Printing Industries Broadening Form applies.  That provision
provides in pertinent part:

**F.    Off-Premises Power Failure**

1.  We will . . . pay for loss of Business Income or
Extra Expense at the described premises caused by the
interruption of service to the described premises.

2.  The interruption must result from direct physical
loss or damage by a "Specified Cause of Loss" to the
following property, not on the described premises.

. . .

(b) Communication Supply Services, meaning
property supplying communication services,
including telephone, radio, microwave, or
television services to the described
premises, such as:

1.    Communication transmission lines;
2.    Coaxial cables, and
3.    Microwave radio relays, except
satellites.

It does not include overhead communication
lines.

. . . .

4.  "Specified Cause of Loss" means the following:
Fire; lightning; explosion, <u>windstorm</u> or hail; smoke,
aircraft or vehicles; riot or civil commotion;
vandalism; leakage from fire extinguishing equipment;
sinkhole collapse; volcanic action; falling objects;
weight of snow, ice or sleet; or <u>water damage</u>.

. . . .

c.  Water damage means accidental discharge or

14

>               leakage of water or steam as the direct result of
>               the breaking or cracking of any part of a system
>               or appliance containing water or steam.

(emphasis added).

Plaintiffs argue that their claim falls squarely within

Coverage F(2)(b), regarding the off-premises loss of

communication supply services.  As a result of Hurricane Katrina,

Plaintiffs sustained a seven to eight month interruption of their

ability to receive secure internet communications through their

Bellsouth telephone lines though such transmission lines to the

building remained intact.  Therefore, the interruption resulted

from a direct physical loss or damage to property located off-

premises.  The question then becomes whether the direct physical

loss or damage to property located off-premises was caused by a

"Specified Cause of Loss," which Plaintiffs argue in this case is

either windstorm or water damage.

As to water damage, Plaintiffs argue that the interruption

of its communication supply services was the direct result of the

breaking of the Seventeenth Street Canal Levee, the London Avenue

Canal Levee, and the Industrial Canal Levee, all which form a

part of the levee "system" protecting the City of New Orleans.

Plaintiffs cite to several legislative, bureaucratic, and

academic sources in which the levees are denoted as a levee

"system" or a "hurricane protection system."

In opposition, Hanover argues that these levees did not form

15

a "system containing water" and thus, water damage caused by the breaking of the levees does not fall within the definition of water damage contemplated by this type of coverage.  Hanover noted that it could not locate any case law across the nation that applies the term "system or appliance" to anything other than a plumbing system or water main.  And at least one court has declined to find coverage in a case not involving a system or appliance.  See Royal Surplus Lines Insurance Co. v. Brownsville Independent School District, 404 F. Supp. 2d 942 (S.D. Tex. 2005) (determining that there was no evidence that roof leaks and other sources of moisture fell within the definition of "water damage").

This Court declines to decide this question, as there exist genuine issues of material fact which preclude summary judgment. Specifically, Plaintiffs have failed to provide any evidence as to what caused the damage to the off-premises structure which ultimately resulted in the interruption of communication supply services.  Plaintiffs offer alternative theories of windstorm or water damage, but fail to offer evidence of either.  In addition, while Plaintiffs did comment that the telephone lines to the building remained intact, it is not clear to this Court that the damaged "property supplying communication services" did not include "overhead communication lines," which is explicitly excluded as a covered communication supply service in the

Printing Industries Broadening Form.  Such an off-handed comment
falls short of meeting Plaintiffs' burden of proof on this issue.
And as to the levee as a "system" issue, Plaintiffs have
similarly failed to satisfy their burden of proving that the
damages in fact resulted from a "breach" of the levees rather
than an overtopping of the levees.  No evidence of the "breaking
or cracking" of a system has been presented by Plaintiffs, which
is what is required in the Off-Premises Power Failure provision
of the Printing Industries Broadening Form.  Accordingly,

   **IT IS ORDERED** that Hanover's **Motion for Partial Summary
Judgment to Dismiss Plaintiffs' Claim for Business Interruption
Coverage Under the Printing Industries Broadening Form's Off-
Premises Power Failure Provision (Rec. Doc. 10)** and Hanover's
**Motion for Partial Summary Judgment Regarding Application of the
Co-Insurance Provision and Limits of Insurance to Business Income
Losses and Extra Expenses (Rec. Doc. 11)** are hereby **GRANTED** in
part and **DENIED** in part.

   **IT IS FURTHER ORDERED** that Plaintiffs' **Motion for Partial
Summary Judgment (Rec. Doc. 14)** is hereby **DENIED.**

   **IT IS FURTHER ORDERED** that oral argument on Plaintiffs'
**Motion for Partial Summary Judgment (Rec. Doc. 14)** is hereby
**CANCELLED.**

17

New Orleans, Louisiana, this 16th day of April, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE